UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL H. SUSSMAN, BENNETT WEISS,
MAURY KNIGHT and DEMOCRATIC
ALLIANCE OF ORANGE COUNTY,

                Plaintiffs,

-vs-

BRIAN A. CRAWFORD, GARRISON
COMMANDER and UNITED STATES
MILITARY ACADEMY AT WEST POINT,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs bring this action for injunctive relief under the First Amendment. Plaintiffs seek a court order allowing them to peacefully protest at the United States Military Academy at West Point on May 26, 2007 for approximately one hour. As further set forth below, although plaintiffs timely complied with defendant's written policies governing political protests at West Point, defendants ignored that request, issuing a belated reply on May 14, 2007, only a few hours <u>after</u> plaintiffs signaled their intent to seek a court order. As set forth below, defendants' untimely reply is insufficient on its face. This Honorable Court should grant plaintiffs the following relief: an order enjoining defendants to issue a permit allowing them to stage a non-violent protest at West Point on May 26, 2007 commencing at 9:00 a.m. and lasting approximately one hour.

## **STATEMENT OF FACTS**

**1. Defendants' speech and protest policy**

As a public institution that trains members of the United States Army and attracts political protesters opposed to American foreign policy, the United States Military Academy at West Point recognizes that the First Amendment entitles citizens to stage on-site political protests. Accommodating protesters, in May 2004, defendants issued a policy governing "protests, picketing, and other similar demonstrations on the West Point Military Reservation." (Exhibit 2 to Sussman aff., at 1, § 1-1).[1]

In setting forth a process allowing citizens to stage political protests at West Point, the policy states that "the Garrison Commander may take such actions as are reasonably necessary and lawful, including ejection from, or denial of access to, the installation of those who threaten a civil disturbance upon or directed against the installation and its activities." Id.

**2. Plaintiffs' request for a permit**

Plaintiffs have been marching in connection with West Point graduations since 2004. It is critical for plaintiffs to coordinate their events with graduations at this military academy, where Bush administration officials have repeatedly articulated its foreign policy goals.[2]

---

[1] The fax receipt for this letter is annexed to the Bergstein affirmation as Exhibit 1.

[2] By way of example, in 2002, addressing West Point graduates, President Bush outlined a new policy of pre-emptive war, stating:

> For much of the last century, America's defense relied on the Cold War doctrines of deterrence and containment. In some cases, those strategies still apply. But new threats also require new thinking. Deterrence – the promise of massive retaliation against nations – means nothing against shadowy terrorist networks with no nation or citizens to defend. Containment is not possible when unbalanced dictators with weapons of mass destruction can deliver those weapons on missiles or secretly provide them to terrorist

In early April 2007, plaintiffs learned that Vice President Richard Cheney would speak at the annual commencement ceremony at West Point, scheduled for May 26, 2007. As local activists who oppose the Bush administration's foreign and domestic policies, since May 2004, plaintiffs have protested administration spokesperson who have attended the annual West Point graduation. On each occasion, approximately 1,000 citizens have staged a non-violent march to the gates of West Point and held a rally thereafter at Veterans Memorial Park in the Village of Highland Falls, New York, approximately three-quarters of a mile from Thayer Gate, one of the entrances to West Point. (Sussman aff. at ¶¶ 3, 5). There is no evidence or any basis to believe that these prior protests were disruptive or disorderly.

Determining again to protest the guest speaker at the West Point graduation, on April 16, 2007, on behalf of Democratic Alliance of Orange County, plaintiff Sussman faxed and mailed a request for written permission to stage a peaceful protest at West Point commencing at 9:00 a.m. on May 26, 2007. (Exhibit 1 to Sussman aff.).

Sussman sent the letter pursuant to West Point's written procedures governing permission to engage in protest activity there. This policy requires applicants to submit a written request 30 calendar days before the proposed event through the Provost Marshall and Staff Judge Advocate to the Garrison Commander, U.S. Army. (Exhibit 2 to Sussman aff., at 2 [§ 1-2(g)]).

Significantly, under the written speech and protest policy, nothing prevents defendants

---

allies.

> We cannot defend America and our friends by hoping for the best. We cannot put our faith in the word of tyrants, who solemnly sign non-proliferation treaties, and then systemically break them. If we wait for threats to fully materialize, we will have waited too long. (www.whitehouse.gov/news/releases/2002/06/20020601-3.html).

from delaying the written permission to stage the protest march, and each passing day without permission makes it more difficult for plaintiffs to successfully organize and publicize the event. (Exhibit 1 to Sussman aff.).

In his letter, Sussman wrote: "[t]he purpose of our event is to demonstrate against the continued [] American invasion of Iraq on May 26, 2007, the same date and time Vice President Cheney shall address graduating cadets. We expect 1000 people to attend this event. These participants shall gather off-base, at Veterans' Memorial Park in the Village of Highland Falls, New York at 8:30 a.m. The assembled shall then march up to and through Thayer Gate onto the West Point Reservation, past the Hotel Thayer and around the large field which lies in front of the hotel. The protesters shall then march back through the gates and off-campus." (Exhibit 1 to Sussman aff., at 1).

The proposed action would minimally interfere with West Point's operations. In his letter, Sussman stated that the assembled would be on the Reservation for no longer than one hour. After outlining how the protesters would arrange for security and transportation, he added, "Nor do we expect to rally on the base, but, as explained, to stage this orderly march <u>through a small part of the reservation</u>." Morever, "I do not believe this proposed action shall interfere, in any way, with the graduation ceremony <u>which will be proceeding on the other end of the large campus</u>." <u>Id.</u> at 1-2 (emphases supplied).

**3. Defendants' belated reply to the permit request**

Although Sussman sent his written request on April 16, 2007, defendants responded on May 14, 2007, only a few hours after plaintiffs advised defendants that they would seek a court order allowing them to demonstrate. (Bergstein aff. at ¶ 5 and Exhibit 3 thereto; Sussman aff. at ¶ 9). The

timing of this response is not coincidental. The delay significantly hampers plaintiffs' efforts to successfully appeal the denial as the targeted protest date is May 26, 2007.

## ARGUMENT

### THIS COURT SHOULD GRANT PLAINTIFFS' APPLICATION FOR EMERGENCY RELIEF

"In order to justify the award of a preliminary injunction, the moving party must first demonstrate that it is likely to suffer irreparable harm in the absence of the requested relief." Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996). Once the likelihood of irreparable harm has been demonstrated, a movant is entitled to relief if it demonstrates "either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor." Id.

Where a movant seeks to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme," it may succeed only by demonstrating a likelihood of success on the merits and irreparable harm. Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996).

### POINT I

### PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION

Defendants' determination that plaintiffs cannot hold their non-violent protest at West Point creates irreparable harm without immediate judicial intervention. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373-74 (1976). See also, Bery, 97 F.3d at 693-94 ("Violations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction") (citing, inter alia, 11A Wright, Miller and Kane, Federal Practice and

Procedure, § 2948.1 at 161 (2d ed. 1995) ("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary")).

## POINT II

**PLAINTIFFS DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS**

"The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' Although First Amendment protections are not confined to 'the exposition of ideas,' 'there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs' This no more than reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" McIntyre v. Ohio Elections Commission, 514 U.S. 334, 346 (1994). McIntyre further recognizes that courts afford heightened First Amendment protection to speech on controversial topics. Id.

"Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971). Prior restraints are "generally disfavored under First Amendment law because [they] 'chill[] potential speech before it happens.'" Harman v. City of New York, 140 F.3d 111, 119 (2d Cir. 1998) (citing, inter alia, Southeastern Promotions v. Conrad, 420 U.S. 546, 559 (1975) ("[A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand"). Such policies also "pose risks of 'self-censorship by speakers in order to avoid being denied a license to speak.'" Id. See also, Beal v. Stern, 184 F.3d 119, 124 (2d Cir. 1999) ("prior restraints on speech and publication are the most serious and the least tolerable infringement

6

on First Amendment rights").

To protect against the possibility of censorship, the Supreme Court requires that "any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained." FW/PBS v. City of Dallas, 493 U.S. 215, 227 (1990). Accordingly, in Lusk v. Village of Cold Spring, 475 F.3d 480, 491-92 (2d Cir. 2007), the Second Circuit struck down a municipal prior restraint which omitted any provision requiring decisionmakers to expeditiously grant or deny a permit application to post political signage. See also, Harman, 140 F.3d at 120 (striking down prior restraint on public employee speech which allowed decisionmakers too much time to resolve the speech request, thereby "allow[ing] the agencies to control the timing of the intended speech. By delaying the review process, the employer has the power to destroy the immediacy of the comment on agency affairs, and thus, in many cases, its newsworthiness").

These holdings are consistent with the Supreme Court's longstanding view that expediency and timing represent the essence of First Amendment activity. Any unreasonable delay in granting or denying permission to speak or assemble is unconstitutional. In prior restraint cases, "dissemination delayed may prove tantamount to dissemination denied." Harman, 140 F.3d at 120 (citing Tribe, American Constitutional Law 1042 (2d ed. 1988); Freedman v. Maryland, 380 U.S. 51, 59 (1965) (noting the deterrent effect of delay in the review process)).

While the reasonableness of the time period during which a restraint on speech may operate "may vary in different contexts" (United States v. 37 Photographs, 402 U.S. 363, 374 (1971)), West Point's protest and public assembly policy contains no deadline whatsoever for decisionmakers to resolve permit applications. Nothing in this policy prevented decisionmakers from granting the request at the last minute, before plaintiffs could effectively organize and publicize

the event or, as in this case, denying the request only nine business days before the scheduled event. This delay in resolving plaintiffs' application makes it impossible for them to appeal that determination in a manner that would still allow them to hold the event on May 26, 2007. As the written speech policy invoked by defendants to deny plaintiffs their request violates the Constitution, plaintiffs have shown a likelihood of success on the merits. An injunction is necessary to ensure that plaintiffs can hold the event as planned.

Equally important is the content of defendant Crawford's letter to Sussman denying the permit request. Crawford stated that West Point has never allowed protests of any kind inside the gates at West Point. Yet, West Point's policy recognizes that the institution may allow demonstrations and protests under the First Amendment. The distinction between protests within and outside the gates is irrational. Any concern for morale or discipline conceivably would apply anywhere on the Reservation. But if political protest on Reservation property is appropriate, why is it inappropriate within the West Point gates?

Moreover, the Supreme Court has held that government officials cannot ban speech outright even at non-public fora. See, Board of Airport Commissioners v. Jews for Jesus, 482 U.S. 569, 575 (1987) ("We think it obvious that . . . a ban [on First Amendment activities at an airport] cannot be justified even if [the airport] were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition on speech"), cited in Huminski v. Corsones, 396 F.3d, 53, 93 (2d Cir. 2004).

Relatedly, viewpoint discrimination is prohibited even at non-public fora. "Once the government permits discussion of certain subject matter, it may not impose restrictions that discriminate among viewpoints on those subjects whether a nonpublic forum is involved or not ...

8

We have never held that government may allow discussion of a subject and then discriminate among viewpoints on that particular topic, even if the government for certain reasons may entirely exclude discussion of the subject from the forum. In this context, the greater power does not include the lesser because for First Amendment purposes exercise of the lesser power is more threatening to core values. Viewpoint discrimination is censorship in its purest form and government regulation that discriminates among viewpoints threatens the continued vitality of 'free speech.'" Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 61-62 (1983).

In allowing Bush administration officials to address the cadets at graduation but at the same time disallowing plaintiffs and their organization from protesting U.S. foreign policy at West Point, defendants have engaged in clear viewpoint discrimination. Defendant Crawford's May 14, 2007 letter states that "[p]ermitting protests or demonstrations inside the gates of the installation is inconsistent with the military mission." (Exhibit 3 to Bergstein aff.). Explicit reference to plaintiffs' protest activities makes it clear that defendants are discriminating against them on the basis of viewpoint. This violates the First Amendment notwithstanding West Point's designation as a non-public forum. Perry Educ. Ass'n, 460 U.S. at 61-62.

In further denying the request, defendant Crawford stated that "I have determined that there is no safe way for up to 1000 people to assemble in any area on the military reservation on May 26, 2007 to protest the appearance of the Vice President of the United States at the graduation ceremony that morning without compromising the safety or our residents, our graduation visitors, and the protesters themselves." (Exhibit 3 to Bergstein aff.). This conclusory justification must fail. Plaintiffs have asserted – and Crawford's letter does not deny – that they have peacefully demonstrated at or near the West Point property in the past. There is no indication in Sussman's

9

April 16, 2007 letter that the hour-long march would be in any way disruptive or burdensome for defendants to officiate. Maintaining order during the protest would not interfere with keeping order during the graduation, including ensuring the orderly accommodation of cadets and their families and the arrival and departure of the Vice President. These events can all be accommodated. Plaintiffs propose an event that lasts approximately one hour, far from the graduation ceremony. There is no risk that plaintiffs or anyone associated with their organization would disturb the peace or cause any problems whatsoever. Defendants' conclusory assertions otherwise cannot be squared with the First Amendment.

While the Supreme Court has granted military officials greater latitude to restrict speech, those principles do not apply here. In Greer v. Spock, 424 U.S. 828 (1976), the Court held that the Fort Dix Military Reservation could preclude political candidates from leafleting and meeting with service personnel. The Court reasoned that "[t]here is nothing in the Constitution that disables a military commander from acting to avert what he perceives to be a clear danger to the loyalty, discipline, or morale of troops on the base under his command." Id. at 840. Similarly, in Brown v. Glines, 444 U.S. 348 (1980), the Court held that the Constitution permitted the Air Force to restrict servicemembers' speech within an Air Force facility consistent with military loyalty, discipline or morale.

While Greer and Brown apply the general rule that "speech that is protected in the civil population may . . . undermine the effectiveness of response to command," Brown, 444 U.S. at 354, that principle is inapplicable here. Plaintiffs will not interact with cadets or their families, and the proposed march is far from the graduation ceremonies. Defendants can offer no rational argument that the protest – far removed from the cadets and distinguished guests – would undermine military

10

effectiveness or morale or disturb the peace.

In Greer, the Court noted that its holding did not prevent political activists from arguing in the future that the speech policy was "applied irrationally, invidiously, or arbitrarily." 424 U.S. at 841. The scenario foreseen in Greer is before us today: in belatedly responding to plaintiffs' request for a permit to march at West Point on May 26, 2007, defendants have arbitrarily and capriciously applied their own speech policy in violation of the First Amendment. This Court should grant this application for injunctive relief and order defendants to issue a written permit allowing the proposed event to proceed as planned.

Finally, protesting at West Point on graduation day is crucial for plaintiffs who desire to publicize their opposition to Bush administration foreign policy at a location synonymous with that policy. Compare, City of Ladue v. Gilleo, 512 U.S. 43, 56-57 (1994) (noting that the location of political speech is relevant in defining the plaintiff's First Amendment interests and that "[a] sign advocating 'Peace in the Gulf' on the front lawn of a retired general or decorated war veteran may provoke a different reaction than the same sign in a 10-year-old child's bedroom window or the same message on a bumper sticker of a passing automobile"). Indeed, since defendants – through their May 2004 policy – contemplate that protest activity is appropriate at West Point, there can be no argument that plaintiffs should hold their event away from the military reservation. "[One] is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Southeastern Promotions, 420 U.S. at 556.

**CONCLUSION**

This Honorable Court should grant plaintiffs the following relief: an order enjoining defendants to issue a permit allowing them to stage a non-violent protest at West Point on May 26, 2007 commencing at 9:00 a.m. and lasting approximately one hour.

Dated:   May 14, 2007

Respectfully submitted,

S/_____
STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiffs
