UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL H. SUSSMAN, BENNETT
WEISS, MAURY KNIGHT and DEMOCRATIC
ALLIANCE OF ORANGE COUNTY

                Plaintiffs,

        07 Civ. 3793(CLB)

  - against -

        ECF Case

BRIAN A. CRAWFORD, GARRISON
COMMANDER and UNITED STATES
MILITARY ACADEMY AT WEST POINT,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

                           MICHAEL J. GARCIA
                           United States Attorney for the
                           Southern District of New York
                           86 Chambers Street, 3rd Floor
                           New York, New York  10007
                           Telephone: (212) 637-2799
                           Facsimile:  (212) 637-2702

MARA E. TRAGER (MT-4598)
JEANNETTE A. VARGAS (JV-7111)
Assistant United States Attorneys
    – Of Counsel –

**Preliminary Statement**

Defendants Brian A. Crawford, in his official capacity as Garrison Commander, and the United States Military Academy at West Point (collectively, the Government" or the "defendants"), by their attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit the following proposed findings of fact and conclusions of law in advance of the hearing scheduled by the Court for Thursday, May 17, 2007, at 9:00 in the morning concerning plaintiffs' motion for a temporary restraining order and a preliminary injunction.

**PROPOSED FINDINGS OF FACT**

1. The United States Military Academy at West Point, New York (the "USMA" or "West Point") is a federal military installation, with the mission of educating and training the cadets at West Point for the purpose of preparing them to serve as officers in the United States Army. See Testimony of Colonel Brian A. Crawford ("Crawford Test."); Testimony of Lt. Col. Brown ("Brown Test.").

2. The USMA's 2007 graduation ceremonies are scheduled to take place on May 26, 2007, beginning at 9:00 in the morning, and Vice President Cheney is scheduled to speak at the graduation ceremonies. Id.

3. On or about April 16, 2007, plaintiff Michael H. Sussman, on behalf of plaintiff the Democratic Alliance of Orange County (the "Alliance"), sent a letter to West Point requesting that the Alliance be allowed "to stage a non-violent protest march" within the gates of West Point on May 26, 2007, the date of the graduation ceremonies, against "the continued the [sic] American invasion of Iraq." See Letter, dated April 16, 2007, from Michael H. Sussman to Staff Judge Advocate (the "Alliance's request"), marked for identification as Gov. Ex. B.

4. The Alliance seeks to march within the gates of West Point at the "same date and time" that Vice President Cheney will be addressing the graduating cadets. Id.

5. On May 14, 2007, the Garrison Commander at West Point, Col. Brian A. Crawford, denied the Alliance's request. See Crawford Test.; Letter, dated May 14, 2007, from Col. Brian A. Crawford to Michael Sussman, marked for identification as Gov. Ex. C .

6. In making his determination to deny the Alliance's request, the Garrison Commander was governed by United States Military Academy Regulation 27-2 ("USMA Reg. 27-7). In that regard, the Garrison Commander determined that the Alliance's proposed demonstration was prohibited by USMA Reg. 27-2, which prohibits demonstrations insideds the gates of West Point. See id.; USMA Reg. 27-2, marked for identification purposes as Gov. Ex. A.

7. In addition, in making his determination, the Garrison Commander also considered his duty to safeguard the security of West Point. The Garrison Commander determined that the Alliance's proposed demonstration would compromise the safety of the USMA's residents, its visitors (including the Vice President), and the demonstrators themselves. Accordingly, in addition to the fact that the Alliance's proposed demonstration was prohibited by USMA Reg. 27-2, the Garrison Commander denied the Alliance's request based on his conclusion that the proposed demonstration would endanger security at West Point. Id.; Brown Test.

8. The Garrison Commander did not deny the Alliance's request because the Alliance proposed to protest against the continuation of the war in Iraq. Id.

9. There is no evidence that the Government has applied its policy against demonstrations in a viewpoint discriminatory manner. Specifically, there is no evidence that

West Point has permitted <u>any</u> demonstrations by uninvited, private citizens within the West Point gates, let alone that it has permitted demonstrations by such private citizens who express certain viewpoints but not other, opposing viewpoints.

## PROPOSED CONCLUSIONS OF LAW

1. **West Point Is a Non-Public Forum**.

Plaintiffs concede that West Point is a non-public forum. As discussed below, the Government may impose greater restrictions on speech in a non-public forum, particularly on a military base like West Point.

  a.  Traditional Public Fora

Traditional public fora are those places which "by long tradition . . . have been devoted to assembly and debate." <u>Perry Educ. Ass'n. v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45 (1983); <u>see also</u> <u>Cornelius v. NAACP Legal Defense and Educational Fund, Inc.</u>, 473 U.S. 788, 802 (1985). In public fora, content-neutral time, place and manner regulations of speech must be narrowly tailored to serve a significant governmental interest and alternative channels of communication must be left open. <u>Make the Road by Walking, Inc. v. Turner</u>, 378 F.3d 133, 142 (2d Cir. 2004) (internal citations omitted). Content-based restrictions can also be upheld but only if they are "necessary to serve a compelling state interest and ... narrowly drawn to achieve that end." <u>Id.</u> (citing <u>Perry</u>, 460 U.S. at 45).

  b.  Non-Public Fora

Government property "which is not by tradition or designation a forum for public communication" is a non-public forum. <u>See</u> <u>Perry</u>, 460 U.S. at 46 (1983); <u>accord</u> <u>Hotel Employees & Restaurant Employees Union v. City of New York</u>, 311 F.3d 534, 546 (2d Cir. 2002). "'Once speech enters the realm of nonpublic forums the government's power over its

regulation increases dramatically.'" Ethredge v. Hail, 56 F.3d 1324, 1327 (11th Cir. 1995) (quoting M.N.C. of Hinesville v. U.S. Dep't of Defense, 791 F.2d 1466, 1474 (11th Cir. 1986). On nonpublic fora, the Government may permissibly impose restrictions on speech that are content-based or based on speaker identity. See, e.g., Cornelius, 473 U.S. at 806. Courts may review such restrictions only to determine if they are reasonable and viewpoint neutral. Id.; Make the Road, 378 F.3d 133 (quoting Perry, 460 U.S. at 46). Further, unlike in a public forum, restrictions on speech in non-public fora need not be narrowly tailored to survive scrutiny. Cornelius 473 U.S. at 809. In fact, the restriction "need not be the most reasonable or the only reasonable limitation." Id. at 808.

Contrary to plaintiff's contention, prior restraints on speech on non-public fora are constitutional so long as the restriction is reasonable and viewpoint neutral. Perry v. McDonald, 280 F.3d 159, 166 (2d Cir.2001).

   c.  Military Bases

The Supreme Court has bluntly and unequivocally rejected the contention that a military base, like West Point, is a public forum for First Amendment purposes: "[t]he notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is thus historically and constitutionally false." Greer v. Spock, 424 U.S. 828, 838 (1976); see also United States v. Albertini, 472 U.S. 675, 676 (1985) (military bases traditionally not public fora "nor did [military base] become a public forum merely because the base was used to communicate ideas or information during [an] open house."); United States v. Corrigan, 144 F.3d 763 (11th Cir. 1998) (United States Army School of the Americas was non-public forum); PMG International Division, LLC v. Rumsfeld, 303 F.3d 1163 (9th Cir. 2002) (military exchanges not public

forums); General Media Comm. v. Cohen, 131 F.3d 273 (2d Cir. 1997) (same).  Moreover, the Supreme Court has recognized that speech which threatens the "loyalty, discipline or morale of troops at (the) installation" can be prohibited on a military base. Greer, 424 U.S. at 831, n. 2; see also 424 U.S. at 840; accord Corrigan, 144 F.3d at 767.

>    2.  **Inviting High-Level Government Officials to Speak to Cadets or Allowing the Public to Attend Graduation Does Not Turn West Point Into A Public Forum.**

>        a.   Invited Speakers

A nonpublic forum does not lose its status even if the Government invites some forms of expressive activity to take place in that forum.  See Greer, 424 U.S. at 838 n.10 ("The fact that other civilian speakers and entertainers had sometimes been invited to appear at Fort Dix did not of itself serve to convert Fort Dix into a public forum . . . .  The decision of the military authorities that [such speakers] would be supportive of the military mission of Fort Dix surely did not leave the authorities powerless thereafter to prevent any civilian from entering Fort Dix to speak on any subject whatever."); Make the Road, 378 F.3d at 144 ("A public forum 'is not created when the government allows selective access for individual speakers rather than general access for a class of speakers.'"); General Media, 131 F.3d at 279 ("[T]he presence of some expressive activity in a forum does not, without more, render it a public forum."); Hawkins v. City and County of Denver,170 F.3d 1281, 1288 (10th Cir. 1999) (holding that Government is not required "to impose a 'zone of silence' on its property to maintain its character as a nonpublic forum"); Brown v. Palmer, 944 F.2d 732, 739 (10th Cir. 1991) ("Courts of Appeal have rejected claims that military bases have become public fora because selected public activities and speech have been permitted to occur on base.") (citing cases).  As the Seventh Circuit explained,

> A non-public forum is not necessarily a place of silence; it may still be a forum, as the term implies; it just is not a place generally open to the public. It does not lose its character as a nonpublic forum merely because outsiders are occasionally invited to speak. A college classroom (and *a fortiori* an elementary school classroom) does not become a public forum because a guest lecturer from the outside is invited to talk to the class. . . . A military base does not become a public forum merely because civilian speakers are occasionally invited to the base. . . . Teachers, of course, express ideas and opinions as part of their teaching, but that is just the sort of thing that does not turn a government building into a public forum. There is plenty of debate and discussion in the White House mess or, we suppose, the CIA's headquarters, but neither of these are public forums of either the traditional or newfangled variety.

May v. Evansville-Vanderburgh School Corp., 787 F.2d 1105, 1113-14 (7th Cir. 1986) (internal citations omitted).

        b.        Government Speakers

There is a fundamental distinction between the Government's use of its property for its own communicative purposes — which does not convert property into a public forum — and the Government's dedication of its property for discourse by the public, which may. See, e.g., Perry, 460 U.S. at 46 ("[T]he state may reserve the forum for its intended purposes, communicative or otherwise . . ."); United States Postal Service v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 130 n.6 (1981) (rejecting contention that government's use of its own property "for the communication of ideas or information" thereby renders it a public forum"); Gregoire v. Centennial School Dist., 907 F.2d 1366, 1370-71 (3d Cir. 1990) ("[A nonpublic] forum exists when publicly-owned facilities have been dedicated to use for either communicative or non-communicative purposes but have never been designated for indiscriminate expressive activity by the general public."). Were speech by the Government on its own property to turn that property into a public forum, virtually all government facilities would become open to the public for a wide range of expressive activity. See Lehman v. City of Shaker Heights, 418 U.S.

298, 304 (1974) (plurality opinion) ("Were we to hold to the contrary, display cases in public hospitals, libraries, office buildings, military compounds, and other public facilities immediately would become Hyde Parks open to every would-be pamphleteer and politician.").

      c.      Members of the Public

The Supreme Court has made clear that a military base is not transformed into a public forum simply because its commanders open access to the base to the public. Greer, 424 U.S. at 836. As the Court in Greer explained:

> The Court of Appeals was mistaken, therefore, in thinking that the Flower[v. U.S., 407 U.S. 197 (1972)] case is to be understood as announcing a new principle of constitutional law, and mistaken specifically in thinking that Flower stands for the principle that whenever members of the public are permitted freely to visit a place owned or operated by the Government, then that place becomes a "public forum" for purposes of the First Amendment. Such a principle of constitutional law has never existed, and does not exist now. The guarantees of the First Amendment have never meant "that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please."

Id. (internal quotations omitted).

      **3.**      **As a Non-Public Forum and a Military Base, West Point's Blanket Policy Against Demonstrations Is Constitutional.**

In Greer v. Spock, the Supreme Court unequivocally established the principle that blanket restrictions on speech are permissible on military installations. In Greer, respondents, the presidential and vice-presidential candidates for the People's Party and for the Socialist Workers Party, were denied permission to make speeches and distribute campaign literature on Fort Dix, a military base that provided basic combat training for newly-inducted Army personnel. 424 U.S. at 830-833. The Court upheld Fort Dix's refusal to permit respondents to engage in that conduct, reasoning that "it was the business of a military installation like Fort Dix

to train soldiers, not to provide a public forum," 424 U.S. at 838, and that Fort Dix's policy served the important purpose of "keeping official military activities there wholly free of entanglement with partisan political campaigns . . . [and insulating the military] from both the reality and the appearance of acting as a handmaiden for partisan political causes or candidates." 424 U.S. at 839. It concluded that respondents did not have a "generalized constitutional right to make political speeches or distribute leaflets" on the military installation. 424 U.S. at 838.

Other cases, following Greer, have similarly upheld general restrictions on protests, demonstrations or other similar speech on military installations. See PMG International Division, LLC, 303 F.3d at 1171-72 (holding that Military Honor and Decency Act, prohibiting sale at military exchanges of sexually explicit material otherwise protected by the First Amendment, was constitutional); General Media Comm., 131 F.3d at 283-85 (same); Ethredge, 56 F.3d at 1328-29 (upholding Air Force base restriction prohibiting bumper-stickers which "embarrass or disparage" the President); Brown, 944 F.2d at 739-40 (Air Force restriction against political leafleting did not violate the First Amendment); Shopco Distribution Co., 885 F.2d at 174-75 (restriction on military base against door-to-door distribution of circular was constitutional); Persons for Free Speech at SAC, 675 F.2d at 1012 (Air Force base commander could deny permission to group requesting permission "to present an alternative to the extremely dangerous and costly arms race" while permitting participation by other civilian groups). In all these cases, restrictions on speech by the military were found to be constitutional.[1]

---

[1] The Greer decision and its progeny are consistent with the deference traditionally shown to the military by courts, including in the First Amendment context. See generally Kokinda, 497 U.S. at 732 ("Consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved."); see also Brown v. Glines, 444 U.S. 348, 354(1980) (explaining that there is a substantial government interest in ensuring

4. **Inviting the Vice President or Other High-Level Government Officials to Speak to Cadets, While Prohibiting Protests or Demonstrations, Does Not Constitute Unlawful Viewpoint Discrimination.**

As a blanket ban on all demonstrations and protests, without regard to the message sought to be conveyed, West Point's policy is manifestly viewpoint neutral.

First, the policy does not violate principles of viewpoint neutrality by drawing a distinction between a speech given by an invited speaker and a public demonstration. See United States v. Corrigan, 144 F.3d 763, 769 (11th Cir. 1998). More fundamentally, the Government may permissibly distinguish between government officials and members of the public in granting access to a nonpublic forum without running afoul of the First Amendment. See Hawkins, 170 F.3d at 1289 ("[D]enying the plaintiffs the opportunity to rebut all messages does not amount to unlawful viewpoint discrimination. 'Government speech would be unduly chilled if any individual or group with views contrary to those of the government were entitled to

---

that military personnel are ready to perform their duty whenever the occasion arises, and that speech that is protected in the civil population may undermine the effectiveness of response to command); General Media Comm. v. Cohen, 131 F.3d at 282-283 ("[i]t is plain to us that governmental restrictions on speech that would run afoul of the Constitution if imposed in civilian life can pass constitutional muster in the military context") (citing Able v. United States, 88 F.3d 1280, 1294) (2d Cir. 1996); see also Goldman v. Weinberger, 475 U.S. 503, 507(1986)("Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society. The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps."); Cafeteria Workers v. McElroy, 367 U.S. 886, 893 (1961) (commanding officers on military installations have "historically unquestioned power ...to exclude civilians from the area of his command"); Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953) ("[J]udges are not given the task of running the [military].... The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. ").

access to non-public governmental fora for rebuttal.'"). To the contrary, "implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of . . . speaker identity." Perry Education Ass'n, 460 U.S. at 49; see also Make the Road, 378 F.3d at 150-51 ("[I]t is permissible for government itself to use its property to express its own viewpoint on a subject without allowing others to express contrary viewpoints."); Brown, 944 F.2d at 738 (government may use military base for its own speech without opening it up to the public).

5. **Even If There Were Evidence That the Garrison Commander Denied the Alliance's Request Due to Concern That The Viewpoint Expressed Would Threaten the Good Order, Discipline, Loyalty and Morale of the Soldiers on the Installation, Such Decision Would Be Constitutional**

Here, there is no evidence that West Point authorities took the actions they did because of the content of plaintiffs' proposed protest march. But even if there was such evidence – and there is not – such action would nevertheless be constitutional. In particular, Greer recognizes that speech which threatens the "loyalty, discipline, or morale of troops at (the) installation" can be prohibited consistent with the First Amendment. 424 U.S. at 831, n.2; see also 424 U.S. at 840; accord Corrigan, 144 F.3d at 767 (upholding prohibition against political demonstrations "which could interfere with or prevent the orderly accomplishment of the installation's mission, or which present a clear danger to the loyalty, discipline, or morale of the troops."). Because the Garrison Commander at West Point determined that plaintiffs' proposed demonstration posed a threat to the security of the installation, the denial of the Alliances' request is sustainable on this separate and independent ground. See Persons for Free Speech at SAC, 675 F.2d at 1020 (base commander's judgment that protest posed threat to order and security was entitled to deference).

Dated: New York, New York
May 17, 2007

                                      Respectfully submitted,
                                      MICHAEL J. GARCIA
                                      United States Attorney for the
                                      Southern District of New York
                                      *Attorney for Defendants*

                            By:    /s/
                                      MARA E. TRAGER (MT-4598)
                                      JEANNETTE VARGAS (JV-7111)
                                      Assistant United States Attorneys
                                      Tel.: (212) 637-2799, 2678
                                      Fax: (212) 637-2702