UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL H. SUSSMAN, BENNETT
WEISS, MAURY KNIGHT and
DEMOCRATIC ALLIANCE OF
ORANGE COUNTY,

                 Plaintiffs,

-vs-

BRIAN A. CRAWFORD, GARRISON
COMMANDER and UNITED STATES
MILITARY ACADEMY AT WEST POINT,

                 Defendants.
-----------------------------------------------------------X

FILED
MAY 21 2007
USDC WP SDNY

NOTICE OF APPEAL

07 Civ 3793 (CLB)
ECF Case

PLEASE TAKE NOTICE that plaintiffs appeal to the United States Court of Appeals for the Second Circuit from the Decision and Order of Hon. Charles L. Brieant denying their request for Rule 65 relief seeking an order allowing to peacefully march at United States Military Academy at West Point on graduation day, May 26, 2007.

Dated:    May 18, 2007

                                            Respectfully submitted,

                                            STEPHEN BERGSTEIN (6810)

                                            BERGSTEIN & ULLRICH, LLP
                                            15 Railroad Avenue
                                            Chester, New York 10918
                                            (845) 469-1277
                                            Counsel for plaintiffs

To:    Mara E. Trager, Esq.
        Assistant United States Attorney
        86 Chambers Street
        New York, N.Y. 10007
        Counsel for defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL SUSSMAN, BENNETT WEISS,
MAURY KNIGHT and DEMOCRATIC
ALLIANCE OF ORANGE COUNTY,

                        Plaintiffs,                             07 Civ. 3793 (CLB)

      - against -                                      ***Findings of Fact and***
                                                           ***Conclusions of Law***
BRIAN A. CRAWFORD, GARRISON
COMMANDER, and UNITED STATES
MILITARY ACADEMY AT WEST POINT,

                        Defendants.
------------------------------------------------------------x

Brieant, J.

       This Civil Rights action for injunctive relief based on the First Amendment was filed on May 15, 2007, together with a requested Order to Show Cause why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining and compelling the Defendants to issue written permission for Plaintiffs to hold a "protest march" at the United States Military Academy ("USMA") at West Point, NY, in this District, on Saturday, May 26, 2007, commencing at 9:00 AM. The march is scheduled to be held within the Cantonment area, as defined below. A brief preliminary hearing was held on May 15, 2007, prior to issuance of the Order to Show Cause, at which the Court ordered that pursuant to Rule 65(a), a trial on the merits would be consolidated with the Rule 65 hearing, and would be conducted on May 17, 2007. This has been done, and following the bench trial, the Court now issues its Findings of Fact and Conclusions of Law.

1

Plaintiffs are a Democratic political organization and three individuals who oppose Bush Administration policies, including but not limited to the War in Iraq. Defendant, Colonel Brian A. Crawford is the Garrison Commander at the West Point Military Reservation, where the United States Military Academy ("West Point") has trained Army officers since 1802. He is the official empowered to receive written requests from persons desiring to protest or engage in other similar demonstrations on the West Point Military Reservation, pursuant to Section 1-2g of USMA Regulation 27-2 ("Reg 27-2"), adopted May 5, 2004 (GX-A).

As contemplated by Reg. 27-2, the Democrats submitted a written request dated April 16, 2007, and signed by Plaintiff Michael H. Sussman, to stage a protest march on the grounds of West Point, inside the installation Gates, on May 26, 2007, the date of the Academy's Graduation Ceremony (PX- 9, GX-B). The stated purpose of the march is to demonstrate against the continued "American invasion of Iraq." Although the request did not so state, Mr. Sussman testified that there were approximately forty other sponsoring groups for the protest last year, and the involvement of other sponsoring groups for this year is confirmed by the Democrats' website, www.westpointrally.org, however, these thirty to forty co-sponsoring groups were not disclosed in the request, and were not identified at the trial. (Tr. at 62; 90-91).

On that day, Vice President Cheney is scheduled to address the graduating cadets. Plaintiffs assume Vice-President Cheney will use the Graduation speech as a forum from which to deliver political speech in support of the War in Iraq, and request that they "be treated in like manner." (PX-9).

2

Beginning in May 2004, Plaintiffs have annually sponsored and conducted a march of approximately 1000 protestors entirely outside the West Point Reservation, near the Thayer Gate, followed by a rally thereafter at Veteran's Memorial Park ("the Park") in the Village of Highland Falls, New York, approximately one half to three quarters of a mile from West Point's Thayer Gate. (Tr. at 62-63). These activities required no permit from Defendants. The Village of Highland Falls authorized the use of Veterans Memorial Park, where the protesters assembled, then marched to the Gate (which is about ten feet inside the Reservation boundary), and then returned to the Park. These three events were essentially peaceful, with some seemingly minimal disorder. (Tr. at 64-65). Last year, due to political conflicts, the march divided into two groups, one of which assembled near the Gate and there was a "fairly spirited set of chants right outside the gate." (Tr. at 65-66). The Village provided an enhanced Police presence near the Gate, and Police Chief Miller of Highland Falls testified that he expects to do so this year, recognizing that opposition to the War in Iraq has become more intense. (Tr. at 100).

*The Cantonment at West Point*

West Point is a very substantial federal military installation which also operates an institution, equivalent to a college and more, which educates cadets over a four year course to become officers and the future leadership of the United States Army. The Reservation consists of approximately 16,000 acres, primarily on the West Shore of the Hudson River, but including Constitution Island, across the river. A smaller portion, referred to as the Cantonment, contains the campus of the Academy, the supporting facilities, faculty and cadet residences, academic

3

halls, administrative offices, the workplaces of military and civilian personnel, as well as Michie Stadium, a football field where the Graduation exercises and Vice President Cheney's speech are scheduled to take place. This area is accessed only by three Gates; Thayer Gate (opening into downtown Highland Falls), Stony Lonesome Gate, and Washington Gate, which are part of a perimeter security enclosure protected by a chain link fence. (Tr. at 11-12; 28). The Gates are manned by security at all times. Ordinarily, Washington Gate is used only by persons entering regularly with Department of Defense Identification. (Tr. at 6; 12). Commercial vehicles are restricted to Stony Lonesome Gate.

Members of the general public are not allowed to enter the Cantonment at their whim, but must state a legitimate purpose, present photo identification, which is subjected to a computer search, and allow a cursory inspection of their vehicle. (Tr. at 6-7; 41). Notwithstanding this policy, and the security concerns it reflects, the Hotel Thayer, within the Gates, is open for weddings, dinner guests and meetings, and the secure campus is open for football games (with a stadium capacity of 37,000 people), band concerts, cadet parades, theatricals and similar cultural events, which the public may attend, upon passing through security at one of the two Gates used by non-Government personnel. (Tr. at 40).

On May 26, 2007, Plaintiffs plan to meet at the Park at 8:30 AM, and march, with up to 1,000 people or more, to and through Thayer Gate, each one presenting identification, past the Hotel Thayer, around the large field which lies in front of the Hotel, and then back through the Gate and off of campus. Plaintiffs estimate that they would be within the Gates for one hour

while Graduation ceremonies are going forward. The request included a representation that the group would "provide security through designated marshals trained in crowd control and non-violent demonstration tactics." (GX-B).

Plaintiffs are somewhat optimistic with respect to their ability to control their march. Mr. Sussman describes the group attending in past years as "sort of elite ... highly educated individuals who have strong and well articulated views concerning American foreign policy." (Tr. at 64). He testified that he himself would be leading the march, that there would be self-selected marshals, and that he has held "training" sessions at his law office and other places, to counsel the protesters against disruptive tactics or violent conduct. (Tr. at 77; 83; 89). Relying on the success of the prior three protests sponsored by the same organization (all outside the Gate), Mr. Sussman expressed confidence that the Democrats would not add unduly to the security risks already present. (Tr. at 68; 88-89).

Defendants and the Court are unable to accept this optimistic assessment of the security risk in 2007. Mr. Sussman's assessment overlooks the facts that opposition to the War in Iraq has intensified greatly in recent months; that expected counter-demonstrators outside the Gate may interact with the group in a hostile manner, or that participants in political "dirty tricks" may seek to infiltrate the march for the purpose of causing trouble, and by their actions discredit Plaintiffs' professed peaceful intentions. *See, e.g.,* Tr. at 100. Also, once the march enters the Gates, interaction is possible with the large number of guests, family and others present. (Tr. at 19). So long as the demonstrators are outside the Gates, the problems are those of Highland

5

Falls. Once inside the Gates, they become the problems of the Academy, superimposed on the increased security problems caused by the increased number of participants present for the Graduation, as well as the presence of the Vice President, his staff and entourage. Plaintiffs have failed to prove that the security concerns of the Defendants discussed below are unreasonable.

By letter dated May 14, 2007 (GX-C, PX-10), Defendant Colonel Brian A. Crawford, the Garrison Commander, denied the request, stating:

> West Point has never permitted protests or demonstrations of any type inside the gates of the installation. As a military installation, West Point exists to fulfill a specific military mission. Permitting protests or demonstrations inside the gates of the installation is inconsistent with the military mission and can detract from the good order, discipline, security, morale, or loyalty of the Soldiers who are assigned to or work at the installation.
>
> \*       \*       \*       \*
>
> On May 26, 2007, it is my specific duty to ensure that graduation events, including the arrival and departure of the graduation speaker and his party, as well as the family members and friends of graduating Cadets, are accomplished in an orderly manner. I have determined that there is no safe way for up to 1000 people to assemble in any area on the military reservation[1] on May 26, 2007 to protest the appearance of the Vice President of the United States at the graduation ceremony that morning without compromising the safety of our residents, our graduation visitors, and the protestors themselves.

On May 26, 2007, when the proposed protest is to occur, there will be in excess of

---

[1] Colonel Crawford, for whom this letter was drafted by some unidentified attorney, testified that what he meant was any area "inside the Gates." (Tr. at 49). The Court accepts his testimony in this regard because in the same letter, Colonel Crawford notes that "[A]lthough I may, under the provisions of USMA Reg. 27-2, allow demonstrations on the West Point Military Reservations outside the gates of the installation, you have not made such a request." (GX-C)(emphasis in original).

6

20,000 more people within the Gates than on an ordinary day. (Tr. at 8; 10). These include approximately 1,000 graduates. Each graduate has 10 tickets for family and friends, and the staff, faculty and undergraduates, as well as their guests will attend. The Vice President will have a party of staff, guests and Secret Service protection. As configured for this ceremony, Michie Stadium will accommodate upwards of 20,000 people. (Tr. at 10). The route of the Democrats' proposed march within the Gates will be approximately three-quarters of a mile east of Michie Stadium. It is doubtful that any part of the Plaintiff's proposed march could be seen or heard from the Michie Stadium. This presents a significant disconnect between Plaintiffs' argument that they should be "treated in like manner" to Vice President Cheney, and be able to express ideas of such magnitude at the same time and on the same "hallowed ground," while not approaching near enough to the Graduation proceedings to interfere. (Tr. at 63; 68).

The record before me does not support a finding that the proposed march inside of Thayer Gate would gain any greater notoriety, attention, or dissemination of ideas than a demonstration outside the Thayer Gate, as has been conducted by Plaintiffs in past years in support of the same issue.

Plaintiffs claim that facially and as applied, the written procedures governing political protest at West Point Military Reservation violate the First Amendment to the United States Constitution.

7

*Legal Standard*

Our Court of Appeals has held that: "[u]nder the prevailing constitutional framework, speech restrictions imposed by the government on property that it owns are analyzed under a 'forum based' approach." *Hotel Employees. & Restaurant Employees. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 544 (2d Cir. 2002). In accordance with *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985)("[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral"), our Court of Appeals has held that "[t]he government may restrict speech in a non-public forum subject only to the requirements of reasonableness and viewpoint neutrality." *Id.* at 546.

During the May 15, 2007, preliminary hearing held prior to issuance of this Court's Order to Show Cause, the parties to this action stipulated that as a military installation, West Point is a non-public forum, and that the Government has an interest in security. *See Transcript, May 15, 2007.*

As earlier noted, in May of 2004, the United States Military Academy issued a policy, which states as its purpose:

> This regulation establishes policies, responsibilities, and procedures for protests, picketing, political speeches and other similar demonstrations on the West Point Military Reservation (WPMR). To maintain law and order and protect the installation and the activities thereon, the Garrison Commander may take such actions as are reasonably necessary and lawful, including ejection from, or denial of access to, the installation of those who threaten a civil disturbance upon or directed against the installation and its activities.

8

*USMA Reg. 27-2 at 1-1.*

Among other provisions, the Policy provides that "it is unlawful for any person to engage in any public protests, picketing or any other similar demonstration without the prior approval of the Garrison Commander." It also provides that:

> In appropriate cases, the Garrison Commander of the WPMR may give express written permission for demonstrations or activity on the West Point Military Reservation property ***outside the gates adjacent to the installation borders***, only if the procedures outlined below are followed.

*USMA Reg. 27-2 at 1-2(f)(emphasis added).*

The procedures to be followed for gaining permission include a requirement that any person or persons desiring to protest, picket or demonstrate submit a written request through the Provost Marshal and Staff Judge Advocate to the Garrison Commander, which must be received at least 30 calendar days prior to the proposed demonstration or activity, and include certain information regarding the planned event, such as its purpose, the numbers expected, the proposed means of providing security and related services, and other information. *See Reg. 27-2 at 1-2(g).*

As earlier noted, by letter dated May 14, 2007, Colonel Crawford, denied Plaintiffs' April 16th request, which they sent after learning "in early April 2007" that Vice President Cheney would speak at the Graduation ceremony at West Point on May 26, 2007. Colonel Crawford testified that the presence at Graduation of Mr. Cheney was announced "some months" prior to April 2007. (Tr. at 20). Plaintiffs complain that Defendants intentionally delayed a

9

response, and criticize the Regulation for not providing a time limit. The Court notes that Plaintiffs themselves waited until nearly one month before the event, although they claim that since 2004 they have been coordinating their events with West Point Graduations, "where Bush administration officials have repeatedly articulated its foreign policy goals." *Memo at 2*. The 30 day minimum time required by Reg. 27-2 did not preclude an earlier application by Plaintiffs, and Plaintiffs are not aggrieved by the delay. It was appropriate for Colonel Crawford to seek the advice of legal counsel, and to consult with respect to security issues with Lt. Colonel Brown, the Provost Marshal, as he did before responding. (Tr. at 13; 45-47).

Plaintiff's letter request stated that Plaintiffs "expect 1000 people to attend" the event, that they did not "expect to rally on the base," and advised that Plaintiff Sussman did "not believe this proposed action shall interfere, in any way, with the Graduation ceremony which will be proceeding on the other end of the large campus." (GX-B). Expectations cannot be presumed necessarily to result in reality, and this is most fundamental in the context of ensuring security during a protest march or rally. The event may not attract the same respectful group which convened in prior years.

Defendants are not required to presume as accurate Plaintiffs' expectation regarding the numbers in attendance and the expected peaceful nature of the march, when there has been no showing of who will attend (other than "elite" highly educated persons), or how the group intends to screen and prevent the attendance of potentially unpeaceful participants, and when the identity of the co-sponsors has not been disclosed. As earlier noted, Mr. Sussman testified to

10

training the self-appointed marshals at his law office, and in his affidavit, he avers that he has "conferred with the police chief for the Village of Highland Falls, Peter Miller, and he has informed me that the Village continues to have no permit requirement for our march...he agreed graciously to provide necessary police escort and protection." *Sussman Affid.* This would obviously apply only outside the Gates, and there is no reason for the Defendants to accept the risk, or gamble on the ability of the group to control its own security.

Nor is past success outside the Gate a harbinger of success in 2007, when there is now a public more divided, as acknowledged by Chief Miller, who cancelled all leaves for May 26, 2007, for his Police Department, because of his opinion that there is more sentiment against the war, and in anticipation of possible counter-demonstrators. (Tr. 100). In light of the current highly charged political environment and obvious potential threats to security, it takes more than a little sang-froid for Plaintiffs to reject the testimony of the experienced officer in charge of security for Graduation, that there is "no safe way." (Tr. at 26; 48). It takes more than this Court can muster.

The security concerns of the Lieutenant Colonel Brown and Colonel Crawford are genuine. It is reasonable to believe that once inside the Gates the dynamic of protesting could change for the worse, with nothing dividing the protesters from those under the protection of Defendants. (Tr. at 19; 23-25).

The Court acknowledges the tremendous burden of ensuring security at any military

11

installation in time of war, particularly when that task is compounded by the necessity of coordinating the effort with the Secret Service personnel responsible solely for the safety of the Vice President. Recent events highlight national security concerns at our military installations. These include a conspiracy involving Fort Dix. Copycat behavior may result after violent events occur or violent plans are uncovered. All these considerations are intensified at Graduation.

It is clear that *any* demonstration or protest within the Gates on Graduation Day creates an insuperable safety and security problem without regard to content, and Defendants' expressed concerns appear to the Court to be content neutral. An application to protest on an ordinary day, or on a day between semesters when the Academy is not actively engaged in its educational mission, is not presented here, and the issues it would raise must be left for future resolution.

These genuinely held reasonable opinions by individuals with responsibility and expertise in the field are entitled to judicial deference. The decision not to allow any protesters within the Gates on campus on Graduation Day was reasonable.

Even apart from security issues, there is an undeniable distinction for purposes of First Amendment consideration between a speech given by an invited speaker and a public protest or demonstration. The Democrats' application letter argues that in "light of the use by Mr. Cheney of your facility the same day for political speech, [we] would strongly suggest that we be treated in like manner and be permitted to exercise the rights of citizenship, that is to protest this administration's policies in a peaceful manner." (GX-B). While Plaintiffs might like "to be

treated in like manner" as Vice President Cheney, neither they nor this Court have the responsibility for selecting a Graduation speaker for the United States Military Academy. Plaintiffs have no claim under the Constitution to be treated in like manner as Vice President Cheney, who was invited to an honorary stage and podium to give a formal address to the graduating cadets. To classify the designated speaker as the equivalent of one thousand protest marchers is not supported by law or logic. The argument is rejected.

As an alternate ground for denying relief to Plaintiffs in this case, the Government argued that wholly apart from the security concerns relied on by Colonel Crawford in support of the denial, "a blanket prohibition on political speech at a military institution is constitutional." (Tr. at 117). While there is clearly authority for the Government's position as to uninvited speakers, *see e.g., Greer v. Spock*, 424 U.S. 828, 838 (1976), this absolutist approach so phrased is somewhat troubling in light of the fact that Graduation Day at West Point has always been, and will likely continue to be, a bully pulpit for political incumbents. Accordingly, this Court relies primarily on the significant security concerns cited by the decision maker as the rationale for denying the protesters a permit on May 26, 2007.

Our Court of Appeals has noted the deference owed where First Amendment concerns intersect with competing concerns of the military:

> Our review of military regulations . . . is far more deferential than constitutional review of similar laws or regulations designed for civilian society . . . and the tests and limitations to be applied may differ because of the military context.
>
> This deference arises from the long-recognized distinctive conditions of military life. The Supreme Court has instructed that the military need not encourage debate or tolerate

13

protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps.

*General Media Communs. v. Cohen*, 131 F.3d 273, 282 - 283 (2d Cir. 1997)(citations and quotation marks omitted). *See also Able v. United States*, 88 F.3d 1280 (2d Cir. 1996).

The Court is not required to test USMA Reg. 27-2 in a vacuum. Its content neutral regulation provides for permitting demonstrations outside of the Gates but not inside. The refusal to issue the specific permit at issue in this case is supported by good faith content-neutral security concerns as fully substantiated in the trial record. The Court concludes as matter of law that as applied to the facts in this case, there is no constitutional violation. Were Plaintiffs' First Amendment rights shown to be violated by denial of the permit, then there would be no adequate remedy at law and an injunction would issue.

The Clerk shall enter a final judgment in favor of Defendants that all relief shall be denied.

X




X

SO ORDERED.

Dated: White Plains, New York
      May 18, 2007

                                            */s/ Charles L. Brieant*
                                            Charles L. Brieant, U.S.D.J.